```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                   MIDDLE DISTRICT OF PENNSYLVANIA


IN RE:                                    :   Case No. 1-03-01663
                                          :
    GALEN R. REICHLEY and                 :   Chapter 13
    ALLEN L. REICHLEY, t/a                :
    REICHLEY BROTHERS,                    :
                                          :
    Debtors                               :
_____

GORDON BROTHERS RETAIL PARTNERS, LLC,     :
CLEARBID, INC., and AGRICAPITAL           :   No. 4:CV-05-1667
CORPORATION, as successors-in-interest    :
to AGWAY, INC.,                           :
                                          :
    Appellants,                           :   (Judge Muir)
                                          :
    v.                                    :
                                          :
MANUFACTURERS AND TRUST COMPANY, as       :
successor-in-interest to KEYSTONE         :
FINANCIAL BANK, N.A.,                     :
                                          :
    Appellee                              :
```

ORDER #2 of

December 28, 2005

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On March 21, 2003, Galen R. Reichley, his brother Allen L. Reichley, and their business Reichley Brothers filed bankruptcy petitions pursuant to Chapter 13 of the Bankruptcy Code. We hereinafter collectively refer to the Reichleys and Reichley Brothers as "the Debtors." Although the Debtors filed separate bankruptcy petitions in the bankruptcy court, that court consolidated them into one action on July 18, 2003.

The Debtors owned and operated poultry and dairy farms on various parcels of land in Union County, Pennsylvania.  The Debtors used two of their tracts as security in connection with mortgages which they obtained from Agway, Inc., and Keystone Financial Bank, N.A. (Hereinafter "Keystone Financial").  The Agway mortgage was recorded on March 26, 1999, and the Keystone Financial mortgages were recorded on September 24, 1999.  In the course of the bankruptcy proceedings, a dispute arose with respect to the priority of Agway, Inc.'s mortgage vis-a-vis Keystone Financial's mortgages.

Gordon Brothers Retail Partners, LLC; Clearbid, Inc.; and Agricapital Corporation (hereinafter collectively "Gordon Brothers") are successors in interest to Agway, Inc.  Manufacturers and Traders Trust Company (hereinafter "M & T") is the successor in interest to Keystone Financial.

On September 27, 2004, Gordon Brothers initiated an adversary proceeding in the bankruptcy court by filing a complaint against M & T in which Gordon Brothers sought a judgment declaring that "the Agway Mortgage is senior in priority to the Keystone Mortgage ...." (Complaint, p. 5, ¶29)  The parties filed cross-motions for summary judgment and on July 5, 2005, the Honorable Mary D. France issued an order and opinion in which she concluded that although the Agway mortgage was recorded first the Keystone Financial mortgages were entitled to priority because the liens at issue arose from future

advances and the Agway mortgage did not on its face state that it secured such loans.

On August 16, 2005, Gordon Brothers appealed Judge France's decision to this court. On August 29, 2005, we issued an order setting forth the briefing schedule. The parties' briefs were timely filed.

M & T filed a sur-reply brief on October 24, 2005. On November 1, 2005, Gordon Brothers filed a motion to strike the sur-reply brief. In our order number 1 of this date we granted the motion to strike the sur-reply brief.

On December 1, 2005, we issued an order in which we allowed any party to seek our recusal because of the undersigned's connection with Manufacturers and trust Company. The time allowed for the parties to seek our recusal expired on December 23, 2005, and to this date no such election has been filed. This matter is ripe for disposition.

In considering the substantive merits of Gordon Brothers's appeal, we will apply

> a clearly erroneous standard to findings of fact, [conduct] plenary review of conclusions of law, and ... break down mixed questions of law and fact, applying the appropriate standard to each component. See, e.g., *Resyn Corp. v. United States,* 851 F.2d 660, 664 (3d Cir.1988); *In re Jersey City Medical Center,* 817 F.2d 1055, 1059 (3d Cir.1987); *Ram Constr. Co., Inc.,* 749 F.2d at 1052-53; Universal Minerals, Inc., 669 F.2d at 101- 02.

In re Sharon Steel, 871 F.2d 1217, 1223 (3d Cir. 1989). We further observe that "we are not barred from considering any issue presented by the record, even though it was not discussed by ... the bankruptcy

judge ...." In re Gilchrist Company, 410 F. Supp. 1070, 1074 (E.D. Pa. 1976)(Green, J.).

This appeal requires us to revisit the parties' cross-motions for summary judgment. Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation vs. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325. We also note that Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 323.

Rule 56 provides that, where such a motion is made and properly supported, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in

their favor. Celotex Corporation vs. Catrett, 477 U.S. 317, 322-23 (1986).

The same standard governs cross-motions for summary judgment. Continental Ins. Co. vs. Kubek, 86 F. Supp. 2d 503, 505 n.2 (E.D. Pa. 2000)(Katz, J.)(citing Appelmans vs. Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987)). When considering such cross-motions "each motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." Nolen v. Paul Revere Life Ins. Co., 32 F. Supp. 2d 211, 213 (E.D. Pa. 1998)(Robreno, J.).

With those standards in mind we turn to the material facts of this case, all of which are undisputed.[1] The vast majority of the material facts upon which we rely in ruling on this case are those set forth in Judge France's opinion and order.[2] The undisputed background facts set forth in Judge France's opinion are as follows:

> Debtors are brothers who owned and operated poultry and dairy farms in Union County, Pennsylvania[,] under the trade name "Reichley Brothers." The farms included two parcels of land, one consisting of 96 acres (Tract I") and the other consisting of 99 acres ("Tract II"). On March 16, 1998, Debtors and other members

---

1. In the brief supporting its appeal, Gordon Brothers states that "[t]he facts are straightforward and not in dispute." (Appellant's Brief, p. 4)

2. In addition to the facts set forth in Judge France's Opinion, we rely upon a small number of undisputed facts relating to Keystone Financial's understanding of the status of Agway's mortgage when Keystone Financial finalized its mortgages with the Debtors. Those facts have been presented by way of the declaration made under penalty of perjury by Pat Hartzell, and they are discussed in detail below.

of the Reichley family executed a document entitled "Continuing Unlimited Guaranty of Payment" ("Guaranty") requiring "the full and prompt payment of any indebtedness and obligation of [Guarantors] ... whether such indebtedness or obligation now exists, or is incurred hereafter, and in whatever form it may be evidenced." The Guaranty executed in favor of Agway was not recorded, and Debtors did not commence making purchases from Agway under the Guaranty until April 2002. On December 30, 1998, the parties on the Guaranty executed a mortgage ("the Agway Mortgage") as security for the Guaranty. This mortgage attached to both Tracts I and II, as well as two much smaller properties (Tracts III and IV). Agway recorded its mortgage with the Union County prothonotary on March 26, 1999.

On the same date the Agway Mortgage was signed, Debtors also executed a "Commercial Line of Credit Note" ("Note") in favor of Agway in an amount not to exceed $500,000.00. As security for the Note, Debtors executed a "Pledge of Collateral" ("Pledge") in which they authorized Agway to hold certain property, including real estate, as security for all debts "now or subsequently owed." The Note was not recorded, nor was it referenced in the Agway mortgage.

On August 17, 1999, Debtors borrowed $172,800.00 from Keystone through two loan transactions secured by mortgages recorded on August 24, 1999[,] against Tracts III and IV. On August 26, 1999, Agway executed two mortgage subordinations in which it agreed to subordinate its lien on Tracts III and IV to Keystone's lien. The subordinations were recorded with the Union County prothonotary's office on August 31, 1999. On September 23, 1999, Keystone extended an additional loan to Debtors in an amount of $607,000.00 secured by mortgages recorded on September 29, 1999[,] against Tracts I, II, III, and IV (collectively "the Keystone Mortgages"). Keystone did not provide actual notice of the recording of the mortgages.

On March 21, 2003, Debtors filed the instant petitions in Chapter 13. Agway's claim was listed in the Debtor's schedules as an unsecured nonpriority claim of $761,741.51. Approximately one year after the debtors filed for relief, Keystone requested Agway to subordinate its mortgage against tract II to Keystone's mortgage. Agway declined the request and, in the same month, assigned its rights in the mortgage to Gordon.

On April 22, 2004, Debtors filed a motion to sell Tract I for $295,000.00 free and clear of both the Agway and the Keystone mortgages. Agway agreed to allow the sale to go forward if the sale proceeds were escrowed until the Court could resolve the dispute as to the priority of the competing claims. An order to that effect was entered on May 25, 2004, and the sale was consummated thereafter.

>On September 27, 2004, Gordon filed the instant adversary complaint seeking a declaratory judgment that the Agway mortgage is senior to the Keystone mortgage against tract I and an order directing that the sale proceeds be distributed to Gordon.  On October 8, 2004, Debtors sought authority from the Court to sell Tract II for $475,000.00 free and clear of liens.  The Court approved the sale of Tract II under the same conditions as set forth in the Order approving the sale of Tract I.  Thereafter, the sale of Tract II was consummated and the proceeds placed in escrow.  Gordon amended its complaint to include Tract II in its request for entry of declaratory judgment in its favor.  M & T filed an answer and counterclaim requesting the Court to determine that its mortgages enjoyed priority over Gordon's mortgage and that the sale proceeds should be paid to M & T.

(Opinion of the Bankruptcy Court, pp. 2-4)  After considering those facts, Judge France granted M & T's motion for summary judgment on its counterclaim, denied Gordon Brothers's motion for summary judgment as to its claim, and directed the entry of judgment in favor of M & T with respect to the sale proceeds at issue.

The foundation of Judge France's opinion is her determination that the Agway mortgage, as a matter of Pennsylvania law, does not secure the subsequent loans (or "future advances") made by Agway to the Debtors after the parties entered into the Agway mortgage.  Judge France based that determination on the holding in <u>Western Pennsylvania National Bank v. Peoples Union Bank and Trust Company</u>, 439 Pa. 304 (1970).

Gordon Brothers now contends that Judge France's determination is based on a misapprehension of that case and the governing Pennsylvania law.  The two issues presented to us in Gordon Brothers's brief supporting its appeal are

7

> 1. Whether the Bankruptcy Court erred in holding that the mortgage held by Agway (the "Agway Mortgage") in certain real property (the "Subject Properties") owned by Galen Reichley and Allen Reichley (the Debtors) did not secure future advances?
>
> 2. Whether the Bankruptcy Court erred by denying the Appellants [sic] [Summary Judgment] Motion and determining that the lien of Appellee in the Subject Properties (the "Keystone Mortgage") was senior in priority to the lien of the Appellant in the Subject Properties?

(Appellants' Brief, p. 2)  Gordon Brothers argues that

> [t]he *Western Pennsylvania* decision, which requires a future advance mortgage to contain the requisite future advance language, by its terms, only applied to bona fide lien holders and, as stated above, Keystone was admittedly not one. Therefore, the Bankruptcy Court should have applied the common law and held that the Agway Mortgage did secure future advances subsequent to the recording of the Keystone Mortgages.

(Id., p. 16)

The fundamental issue for us to resolve in this appeal is simply whether the holding of the Supreme Court of Pennsylvania in <u>Western Pennsylvania National Bank</u> applies to the facts of this case. Our analysis begins with the issue addressed by that court. Justice Roberts wrote the opinion, noting that

> [t]he only question on this appeal is whether a mortgagee whose mortgage contains no provision with respect to future advances has a prior lien on the mortgaged property with respect to future advances <u>as against a bona fide lienholder</u> whose lien attaches after the future advances are made.

Western Pennsylvania National Bank v. Peoples Union Bank and Trust Company, 439 Pa. 304, 307 (1970)(Emphasis added).  That court's holding was expressed as follows in equally clear terms:

> We hold that a mortgage which does not specifically indicate that it covers future advances gives the mortgagee no lien on the

> mortgaged property other than for the unpaid portion of the original advance, together with any incidental charges properly provided for in the mortgage.

Id., at 308.

In the bankruptcy appeal currently before us, it is undisputed that the liens at issue, and for which Gordon Brothers seeks to recover the sale proceeds, arose from loans made by Agway to the Debtors, long after both the Agway mortgage and Keystone mortgages had been recorded. The debts at issue in this case stem from future advances.

As noted above, Gordon Brothers argues that <u>Western Pennsylvania National Bank</u> does not apply to the facts of this case because M & T's predecessor, Keystone Financial, was not a bona fide lienholder. Gordon Brothers specifically contends that "it is absolutely clear that Keystone had notice that Agway was asserting a future advance mortgage." (Appellants' Brief, p. 18)  The only evidence of record cited by Gordon Brothers in support of that contention is a statement by Pat Hartzell, who was the settlement officer for the loan transaction between Keystone Financial and the Debtors.

M & T filed Hartzell's unsworn declaration in support of M & T's brief opposing Gordon Brothers's summary judgment motion.  In a portion of her statement, Hartzell declares that "[i]f Ms. Heiser[, who was an employee of Agway,] had advised [Hartzell] that Agway would not agree to subordinate the Agway mortgage, the refinance closing would not have been completed." (Hartzell Unsworn Declaration, p. 2,

9

¶6)  Gordon Brothers points to that statement as proof that M & T was aware of Agway's mortgage and therefore is not entitled to the status of a "bona fide" lienholder.

Although Judge France did not cite, and does not appear to have relied upon, Hartzell's unsworn declaration, Agway concedes that the representations in the declaration may be accepted as true for the purposes of ruling on the parties' summary judgment motions. (Appellants' "Memorandum of Law in Further Support of Their Motion for Summary Judgment and in Opposition to Defendants [sic] Cross-Motion for Summary Judgment," p. 4 (commenting that Hartzell's statements "[e]ven if true (which one must assume for the purposes of summary judgement ...")))  In addition to the statement set forth above, in her declaration Hartzell further represents the following:

> 4.  In connection with the refinance transaction, I spoke with Stephne Heiser, an employee of Agway regarding the need for a subordination of a mortgage held by Agway in connection with the $607,000 Keystone mortgage.  Ms. Heiser had previously spoken with Kim Grow of our office regarding the subordination.
>
> 5.  Ms. Heiser specifically informed me that Agway would agree to subordinate the lien of its mortgage to the financing being provided by Keystone.  Furthermore, Ms. Heiser advised me that Agway would record the subordinations and provide copies to me.
>
> 6.  In reliance upon representations made to me by Ms. Heiser, I completed the closing on the refinance transaction and marked up the title insurance commitment indicating that the Agway mortgage would be subordinated.  ...

(Hartzell Unsworn Declaration, pp. 1-2, ¶¶4-6)  We have considered those facts in ruling on the parties' cross-motions for summary

judgment because the facts relate to the material issue of whether Keystone Financial qualifies as a bona fide lienholder.

Gordon Brothers further contends that whatever belief or beliefs Keystone Financial developed as a result of Ms. Heiser's statements are irrelevant because Agway never entered into any written subordination agreement.  Gordon Brothers takes the position that

> the only *material* fact as to the issue of subordination is the existence of a written subordination of the Agway Mortgage. Since M & T admits no such written agreement exists, this argument [based on Agway's representations that such an agreement would be entered into] must fail.

(Appellants' "Memorandum of Law in Further Support of Their Motion for Summary Judgment and in Opposition to Defendants [sic] Cross-Motion for Summary Judgment," p. 4)(Emphasis in original)

The flaw in Gordon Brothers's argument is that it fails to consider the manner in which the statements made by Ms. Heiser relate to the issue of whether Keystone Financial qualifies as a bona fide lienholder.

As noted by Judge France in footnote 4 of her opinion,

> [i]n a legal context, the term bona fide looks almost exclusively to subjective good faith.  For example, a bona fide purchaser, a bona fide holder for value, a bona fide mortgagee or a bona fide possessor of property may be party to illegal transactions yet exempt from liability because the action was taken in subjective good faith irrespective of another's prior or superior claim of right to the property.

(Opinion of the Bankruptcy Court, p. 9, n.4 (quoting Slatkey v. Amoco Oil Company, 830 F.2d 476, 489 (3d Cir. 1987))

The undisputed facts of this case establish that, before Keystone Financial finalized its mortgage with the Debtors, Agway had represented to Keystone Financial that Agway would "subordinate the lien of its mortgage to the financing being provided by Keystone." Agway failed to fulfill its promises. There is no contention that it was unreasonable for Keystone Financial to have relied upon Ms. Heiser's statements.

We are of the view that those statements by Heiser, and Keystone Financial's reliance thereon, qualify Keystone Financial as a bona fide mortgagee because they provided a valid basis for Keystone Financial to believe that its mortgage would have priority over Agway's mortgage. In other words, Keystone Financial proceeded in good faith when it decided to consummate the refinancing with the Debtors because it was relying on Agway's statements by Heiser concerning subordination of the Agway mortgage to the Keystone Financial mortgages. In light of the statements made by Heiser, it would be patently unfair to deny Keystone Financial status as a bona fide lienholder simply because Agway failed to follow-through with the written subordination agreement which had been promised by it.

Because Keystone Financial was a bona fide lienholder, this case is governed by the Supreme Court of Pennsylvania's holding in <u>Western Pennsylvania National Bank</u>. Judge France properly granted the Appellee's motion for summary judgment and denied the Appellants

motion for that same relief.

    NOW, THEREFORE, IT IS ORDERED THAT:

1. Gordon Brothers's appeal of the Opinion and Order of the Bankruptcy Court dated July 5, 2005, is without merit.

2. The Opinion and Order of the Bankruptcy Court dated July 5, 2005, is affirmed.


                                       s/Malcolm Muir  
                                       MUIR, U.S. District Judge

MM:ga